137 Ga. App. 511 (1976)
224 S.E.2d 491
C. L. A. et al.
v.
STATE OF GEORGIA.
51503.
Court of Appeals of Georgia.
Argued January 12, 1976.
Decided February 6, 1976.
Paris & Burkett, Richard J. Burkett, James W. Paris, for appellants.
Nat Hancock, District Attorney, for appellee.
CLARK, Judge.
This appeal by two juveniles contends error in the juvenile court's surrender of its first-obtained jurisdiction by entry of an order transferring their cases to the superior court.
1. The transcript indicates a misconception below of the nature of the "Transfer Hearing" provided for in Code § 24A-2501 whereby the juvenile court may surrender its jurisdiction to another court. At the commencement of this trial to determine whether the juvenile court would waive its jurisdiction over the two appellant youngsters charged with a felony, the judge announced "All I want to do this morning is to show probable cause for transferring it to the grand jury." (T. 2). In this ruling the judge confused the transfer hearing procedure under Code Chapter 24A-25 with the "Court of Inquiry" provided in Chapter 24A-39. In the latter chapter, "probable cause" is the phrase legislating the standard whenever the juvenile court acts as a court of inquiry.
A transfer hearing is of a totally different nature. It is not to be treated as similar to a committal court nor as an arraignment under the Criminal Code. Kent v. United States, 383 U. S. 541 (86 SC 1045, 16 LE2d 84) ruled that the decision by a juvenile court to surrender its jurisdiction was a critical determination affecting the tenor of the juvenile's subsequent treatment in the courts and therefore "must measure up to the essentials of due process and fair treatment." Our court expressly recognized the essentiality of satisfying due process requirements in transfer hearings in Reed v. State, 125 Ga. App. 568 (188 SE2d 392).
2. In Code § 24A-2501 the General Assembly spelled out in detail specific requirements which had to be met before a case was subject to transfer from the juvenile court to other courts. Our Supreme Court in J. W. A. v. State of Ga., 233 Ga. 683, 684 (212 SE2d 849) observed that these codal requirements constituted "the only means by which the juvenile court can divest itself of jurisdiction under the Juvenile Code." The court further commented that "[t]ransfer proceedings under this section of the *512 [Juvenile] Code have been scrutinized carefully by the Court of Appeals and it has been vigilant in requiring that the findings prescribed therein must be made prior to transfer of jurisdiction." Our cases ruling to this effect are D. M. N. v. State of Ga., 129 Ga. App. 165 (199 SE2d 114); J. J. v. State of Ga., 135 Ga. App. 660 (3, 4) (218 SE2d 668); R. E. D. v. State of Ga., 135 Ga. App. 776 (219 SE2d 24) and J. G. B. v. State of Ga., 136 Ga. App. 75 (220 SE2d 79).
3. The burden of meeting the stated requirements of Code § 24A-2501 is upon the state. D. M. N. v. State of Ga., supra; J. J. v. State of Ga., supra. The state here failed to satisfy this burden as it introduced no evidence other than a showing of participation in the crime by the juveniles along with an adult.
4. In his order for transfer the juvenile court judge based his ruling in part upon the nature of the crime. This alone is not sufficient to satisfy the requirements of the statute. "We do not believe that the number and severity of the offenses, standing alone, can establish the absence of amenability to rehabilitation." J. G. B. v. State of Ga., 136 Ga. App. 75, 77, supra.
5. Despite the court's opening directive which apparently intended to limit the hearing to one of "probable cause," the juveniles submitted without objection evidence which showed their amenability to treatment and rehabilitation possibilities. In entering his order the trial judge recognized the necessity of complying with the statutory strictures governing transfer hearings. This is demonstrated by his specific references to the five requirements for transfer contained in Code § 24A-2501 (a) (3). In doing so, however, he stated that the court was acting "in its discretion." (R. 14). The statute directs the court to exercise its discretion in determining the existence of reasonable grounds. But as we said in J. J. v. State of Ga., 135 Ga. App. 660 (218 SE2d 668) at page 663 and continuing over to page 664: "Since the statute requires the state to show `reasonable grounds,' there must be testimony as to the rehabilitation possibilities or absence thereof in the record to meet the `due process' requirements granted juveniles by the Supreme Court cases of In Re Winship ... and Kent v. United States... In order for an appellate court to determine if the state has *513 carried the burden of proving that the child is not amenable to rehabilitation, there must be evidence in the record for consideration in the appellate court." Such discretion is not shown by quoting the language of the statute. We sought to make clear in D. M. N. v. State of Ga., 129 Ga. App. 165, supra, that the transfer order must realistically reflect why the child is not amenable to treatment as a juvenile. Such a decision must be based on evidence and the basis for it must be clearly reflected in the transfer order itself. Such statutory discretion cannot be based on undisclosed personal information known to the trial jurist and in disregard of the evidence in the record. Here, the only evidence concerning the issues of amenability to treatment or rehabilitation and the other elements stated in paragraph 3 of § 24A-2501 came from testimony on behalf of the juveniles.
6. This evidence presented in behalf of the juveniles indicated that they were amenable to treatment or rehabilitation within the meaning of the statutory language. No rebuttal evidence was presented by the state. Under these circumstances the court below erred in entering the order divesting the juvenile court of its jurisdiction and transferring the cases to the superior court for treatment as adult offenders. A reversal is therefore demanded. See R. E. D. v. State of Ga., 135 Ga. App. 776, supra.
7. The court below properly divided its order into two parts. The first portion was a determination that the juveniles had committed the alleged offense. The second section was a finding that they were not amenable to treatment or rehabilitation, that they were not committable to an institution for the mentally retarded or mentally ill, and that the interests of the said juveniles and the community required them to be placed under legal restraint. As heretofore stated, we have remanded the case because the evidence did not support the second portion and therefore jurisdiction remains in the juvenile court.
Since, however, there has been a determination supported by evidence beyond a reasonable doubt that the juveniles did commit the offense, there is now no need for an adjudicatory hearing. Under the Juvenile Court Code *514 the next step after an adjudication of delinquency is a dispositional hearing. Therein "all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." Code Ann. § 24A-2201 (d). See also C. A. J. v. State of Ga., 127 Ga. App. 813, 816 (195 SE2d 225). It should be noted that our Supreme Court ruled in M. E. B. v. State of Ga., 230 Ga. 154, 156 (195 SE2d 891), that dispositional hearings must be held in the county of the juvenile's residence to meet state constitutional requirements.
Judgment reversed. Bell, C. J., and Stolz, J., concur.